## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF                         CIVIL ACTION
BONVILLIAN MARINE SERVICE, INC.
As Owner and Operator of the             NO. 19-14651
M/V Miss April in a Cause of Action for
Exoneration from or Limitation of Liability    SECTION D (1)

## ORDER

Claimant Baywater Drilling, LLC moves to dismiss this limitation action for lack of jurisdiction.[1] The Motion is joined by Junior Joseph Pellegrin and Dana Lebouef Pellegrin.[2] Bonvillian Marine has filed an Opposition,[3] and Baywater has filed a Reply.[4] The Court held oral argument on November 17, 2020.[5] After careful consideration of the parties' memoranda and the applicable law, and finding that the Court lacks jurisdiction, the Court grants the Motion.

## I.    FACTUAL BACKGROUND

On January 19, 2019, Bonvillian Marine Services, Inc., LLC's ("Bonvillian Marine") vessel, the M/V MISS APRIL, was towing two barges when it allided with Baywater Drilling, LLC's ("Baywater") crewboat, the M/V MISS SADIE ELIZABETH, as the Baywater boat was docked at the French's Welding Port Sulphur Dock on navigable waters near Port Sulphur, Louisiana.[6] The allision resulted in

---

[1] R. Doc. 14.
[2] R. Doc. 15.
[3] R. Doc. 23.
[4] R. Doc. 37.
[5] R. Doc. 49.
[6] R. Doc. 1 at 3 ¶ 6.

property damage to the M/V MISS SADIE ELIZABETH and the dock, as well as personal injuries to Junior Joseph Pellegrin, Jr., a seaman aboard the M/V MISS SADIE ELIZABETH.[7]

On February 18, 2019, Jerry Carney, a claims adjuster with Jerry L. Carney & Associates, Inc., emailed Shirley Bickford, an examination claims worker administering maintenance and cure for Pellegrin on behalf of Baywater. Carney wrote in the email: "I am representing Bonvillian Marine in the captioned matter. I understand you are handling Mr. Pellegrin's claim on behalf of Baywater. I would appreciate you giving me a call to discuss this matter."[8] Bickford responded on March 1, 2019, stating "Per our discussions, we understand that Bonvillian Marine is interested in trying to resolve the personal injury claim of Baywater's Junior Pellegrin on January 19, 2019."[9] Bickford then proceeded to describe the maintenance and cure paid to date, which at the time totaled less than $4,000.[10]

On March 13, Carney emailed Bickford again saying "I have relayed our discussion this morning to my principals. I have asked for an expedited response. I'll keep you posted. In the meantime, I look forward to the medicals and copy of the statement."[11] Bickford followed up less than an hour later with the medical records of Junior Pellegrin. Pellegrin's medical records provided by Bickford stated: "He complains of severe leg pain, some occasional right leg pain, but mainly left. He is

---

[7] *Id.*
[8] R. Doc. 14-2 at 4.
[9] *Id.* at 5.
[10] *Id.*
[11] R. Doc. 14-2 at 7.

status post physical therapy which did not give him any relief. He remains with symptoms. We have previously discussed the possibility of injection."[12] It also stated that he had "L4-L5 lumbar herniated disc" and "Low back pain with left lower extremity radiculopathy."[13] The records further stated: "Should he remain symptomatic, we will consider surgical intervention with left side L4-L5 microdiscectomy."[14] On March 26, Carney emailed Bickford again stating "My principals have requested you furnish us with the updated medicals including whether or not there has been any recommendation for Mr. Pellegrin to have surgery."[15]

On August 23, 2019, Mr. Pellegrin commenced a lawsuit against Bonvillian Marine in Louisiana state court.[16]   On December 12, 2019, less than four months later, Bonvillian Marine, as owner and operator of the M/V MISS APRIL, filed a Verified Complaint in a cause of exoneration from or limitation of liability.[17] Bonvillian Marine alleged the Complaint was filed within six months from the date it first received written notice of the claim, since it was filed within six months of the lawsuit being filed against it in state court.[18] Bonvillian Marine attests the value of the M/V MISS APRIL at the termination the voyage, and thus the maximum

---

[12] *Id.* at 9.
[13] *Id.* at 10.
[14] *Id.* at 11.
[15] *Id.* at 12.
[16] *Id.* at 4 ¶ 10.
[17] R. Doc. 1.
[18] *Id.* at 4 ¶ 11.

amount for which it may be liable in this limitation action, to be three-hundred twenty eight thousand dollars ($328,000.00).[19]

Baywater has filed a Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction.[20]   In its Motion, Baywater contends Bonvillian Marine's limitation action was untimely because written pre-suit letters and emails exchanged in February and March of 2019 between Baywater and Bonvillian Marine gave the latter notice of a claim that could exceed the value of the vessel.[21]   Baywater argues the six-month statutory deadline under the Shipowner's Limitation of Liability Act, which states a limitation "action must be brought within 6 months after a claimant gives the owner written notice of the claim,"[22] is jurisdictional in nature, and as such, the party asserting jurisdiction, here Bonvillian Marine, bears the burden to show the limitation action was timely.[23]

Baywater contends that the pre-suit written communications between its claims examiner, Shirley Bickford, and Bonvillian Marine's claims adjuster, Jerry Carney, constituted sufficient notice of a claim because Bickford and Carney were acting as agents for their respective principals.[24]   Further, Baywater claims Bonvillian Marine was put on notice of a reasonable possibility that it faced a claim in excess of the value of the vessel from medical records provided during those communications indicating a possibility of lower back surgery.[25]   Baywater states Mr.

---

[19] *Id.* at 4 ¶ 12.
[20] R. Doc. 14.
[21] R. Doc. 14-1 at 1.
[22] 46 U.S.C. § 30511(a).
[23] R. Doc. 14-1 at 5.
[24] *Id.* at 8-9.
[25] *Id.* at 11-12.

Pellegrin eventually had a lower spine fusion on August 27, 2019, and Baywater has paid over $237,000 in maintenance and cure benefits on behalf of Pellegrin due to his back injuries.[26]

Bonvillian Marine opposes Baywater's Rule 12(b)(1) Motion.[27]   In its Opposition, Bonvillian Marine challenges the Fifth Circuit's jurisprudence that the limitation's six-month time limit is jurisdictional, relying on a 2015 Supreme Court decision, *United States v. Kwai Fun Wong*.[28] Bonvillian Marine argues the Supreme Court's decision to hold the Federal Torts Claims Act's time limitation as nonjurisdictional in *Wong* provides a good-faith basis for the Fifth Circuit precedent to be changed.[29]   If the six-month time limit is considered nonjurisdictional, Bonvillian Marine argues Baywater's claims against it for untimeliness would be an affirmative defense which should be examined under a 12(b)(6) or summary judgment standard.[30]

Further, Bonvillian Marine contends its limitation action was timely because it was filed within six months of the state-court filed lawsuit.[31]   Bonvillian Marine argues Baywater has failed to produce a single written communication between the parties pre-suit.  Bonvillian Marine alternatively argues that if Carney is found to have acted as its agent, the communications still did not reveal a reasonable possibility of a claim exceeding the value of the limitation fund because the doctor's

---

[26] R. Doc. 14-1 at 2, 4.
[27] R. Doc. 23.
[28] *Id*. at 3; 575 U.S. 402, 135 S.Ct. 1625, 191 L.Ed.2d 533 (2015).
[29] *Id*.
[30] *Id*. at 5.
[31] *Id*. at 6.

notes provided in those communications reflect that the possibility of surgery would only be considered if symptoms continued.[32]   Baywater filed a Reply,[33] in which it largely reiterated arguments made in the original Memorandum.

## II.   ANALYSIS

### A.   Limitation Statute and Jurisdiction

The parties disagree about whether the statutory deadline is jurisdictional in nature or a claim-processing rule.  Baywater contends that the statutory deadline is jurisdictional, whereas Bonvillian Marine disagrees.  If, as Baywater argues, the statute is jurisdictional, Baywater's Motion attacks jurisdiction and is evaluated under Federal Rule of Civil Procedure 12(b)(1).  "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim."[34]   The party asserting jurisdiction [Bonvillian Marine] bears the burden of proof when the Rule 12(b)(1) challenge has been asserted."[35]   When a party raises a factual attack on subject matter jurisdiction, matters outside the pleadings may be considered, including "affidavits, testimony, or other evidentiary materials."[36]   When a defendant (or here, Claimant) makes a factual attack, "no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed materials facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[37]   Instead,

---

[32] *Id.* at 11, 16-17.
[33] R. Doc. 37.
[34] *In re FEMA Trailer Formaldehyde Products Liability Litigation,* 668 F.3d 281, 286 (5th Cir. 2012).
[35] *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009).
[36] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[37] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

"the trial court is free to weigh the evidence and resolve factual disputes dispositive of subject matter jurisdiction."[38]

If, on the other hand, the statutory deadline is non-jurisdictional, as Bonvillian Marine argues, the Motion should be considered under Federal Rule of Civil Procedure 12(b)(6) or Rule 56, depending on what the Court considers in its evaluation. If the Court were to consider Baywater's Motion under a 12(b)(6) analysis, the Court would accept all well-pleaded facts as true and view those facts in the light most favorable to Petitioner.[39]  However, because consideration of Baywater's argument requires reviewing the materials it attaches in its Motion, the Court would likely be required to covert the Motion to one for Summary Judgment.[40]  Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[41]  The Court views facts and draws reasonable inferences in the non-movant's favor.[42]  The Court neither assesses credibility nor weighs evidence at the summary judgment stage.[43]

The relevant section in the statute, 46 U.S.C. § 30511(a), states that a limitation "action must be brought within 6 months after a claimant gives the owner written notice of the claim."  It is black letter law in the Fifth Circuit that the statute's timeliness requirement is jurisdictional.  In *In re Eckstein Marine Service, L.L.C.*,[44] the Fifth Circuit clearly stated that "[t]his circuit, like several other courts, has held

---

[38] *Montez v. Dep't of Navy*, 392 F.3d 149, 149 (5th Cir. 2004).
[39] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[40] Fed. R. Civ. P. 56.
[41] Fed. R. Civ. P. 56(a).
[42] *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018).
[43] *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (internal citation omitted).
[44] 672 F.3d 310 (5th Cir. 2012).

that a party alleging a limitation petition was not timely filed challenges the district court's subject matter jurisdiction over that petition. . . . While many statutory filing deadlines are not jurisdictional, we have long recognized that some are.   The Limitation Act's six-month filing requirement is one of these."[45]  Similarly, in *In re RLB Contracting Inc.*,[46] the Fifth Circuit stated:  "A party who contends that a limitation action was not timely filed challenges the district court's subject matter jurisdiction."[47]

Bonvillian Marine recognizes that the Fifth Circuit has held a challenge to the timeliness of a limitation action is a challenge to subject matter jurisdiction.  It argues that a recent Supreme Court decision, *United States v. Kwai Fun Wong*[48] calls into question the Fifth Circuit's precedent on the matter. In *Wong*, the Court resolved a circuit split by concluding the time limitations of the Federal Torts Claims Act (FTCA) were non-jurisdictional.  Bonvillian Marine argues this decision undermines Fifth Circuit cases such as *In re Eckstein*, as those cases reference FTCA's jurisdictional filing deadlines as an example to show some filing deadlines can be jurisdictional.   Indeed, at oral argument Bonvillian Marine stressed that *In re Eckstein* relied on cases finding the FTCA jurisdictional, and the Fifth Circuit has since recognized that those underlying cases were overruled by *Wong*.[49] Bonvillian Marine also cites to an Eleventh Circuit case, *Orion Marine Construction, Inc. v.*

---

[45] *Id.* at 315.
[46] 773 F.3d 596 (5th Cir. 2014).
[47] *Id.* at 601.
[48] 575 U.S. 402 (2015),
[49] *See Trinity Marine Products, Inc. v. United States*, 812 F.3d 481, 486-87 (5th Cir. 2016).

*Carroll,*[50] in which that Circuit relied on *Wong* to rule the Limitation's Act time limits are non-jurisdictional. In *Wong,* the Court set guidelines to determine whether a time limitation is jurisdictional. Specifically, *Wong* states that procedural rules, including time bars, "cabin a court's power only if Congress has clearly stated as much," and that "absent such a clear statement, courts should treat the restriction as nonjurisdictional."[51] Bonvillian Marine argues the Fifth Circuit's prior decisions should be overruled by *Wong* because first, there is no clear statement by Congress in the statutory language that this time limit is jurisdictional, and second, the Limitation of Liability Act does not provide its own grant of jurisdiction.

Bonvillian Marine makes a compelling argument that the Limitation Act's timeliness requirement is non-jurisdictional post-*Wong*.[52] But the Fifth Circuit has not overruled *In re Eckstein*[53] or *In re RLB Contracting*.[54] Indeed, in *In re Eckstein*, the Fifth Circuit *directly noted* that the Supreme Court "has recently concluded that many filing deadlines are probably not jurisdictional" but continued to note that the Supreme Court "has not explicitly or implicitly rejected this Circuit's prior conclusion that the Limitation Act's six-month filing deadline is a jurisdictional requirement."[55] Moreover in *Brown v. Edwards & Richter, L.L.P.*,[56] a post-*Wong* case, the Fifth Circuit reiterated that the Limitation statute is jurisdictional, stating: "We treat this

---

[50] 918 F.3d 1323 (11th Cir. 2019).

[51] *Wong*, 575 U.S. at 409.

[52] The Court notes that when asked at oral argument whether the statute remained jurisdictional under the test set out in *Wong*, Baywater's counsel did not argue that it was, but rather relied on standing Fifth Circuit precedent.

[53] 672 F.3d 310 (5th Cir. 2012).

[54] 773 F.3d 596 (5th Cir. 2014).

[55] *In re Eckstein* at 315 n.12.

[56] 766 F. App'x 30 (5th Cir. 2019)

time limit as a jurisdictional requirement subject to our *de novo* review."[57]  Therefore, as other district courts have recognized,[58] the Fifth Circuit's precedent remains binding on this Court, and this Court must treat the Limitation Act's statutory deadline as jurisdictional.

**B.  Notice of a Claim**

The Court next considers whether Bonvillian Marine received notice of a claim sufficient to trigger the six-month time limitation before Pellegrin's August 2019 lawsuit.  This dispute largely turns on whether Shirley Bickford's communications to Jerry Carney in February and March 2019 constitutes notice to Bonvillian Marine. As described above, on February 18, 2019, Carney, a claims adjuster, emailed Bickford, claims adjuster for Baywater, and stated "I am representing Bonvillian Marine in the captioned matter.  I understand you are handling Mr. Pellegrin's claim on behalf of Baywater.  I would appreciate you giving me a call to discuss this matter."[59]  Bickford responded on March 1, 2019, stating "Per our discussions, we understand that Bonvillian Marine is interested in trying to resolve the personal injury claim of Baywater's Junior Pellegrin on January 19, 2019."[60]  On March 13, Carney emailed Bickford again saying "I have relayed our discussion this morning to my principals.  I have asked for an expedited response.  I'll keep you posted.  In the

---

[57] *Id.* at 32.
[58] *See In re United Marine Offshore LLC*, No. 6:18-CV-01045, 2019 WL 2170642, at *2 (W.D. La. Apr. 22, 2019) ("Until the Fifth Circuit reverses course, this Court will continue to follow the jurisprudence holding that the six-month deadline set forth in Section 30511 is jurisdictional and that a shipowner's failure to meet that deadline deprives the court of subject-matter jurisdiction.").
[59] R. Doc. 14-2 at 4.
[60] *Id.* at 5.

meantime, I look forward to the medicals and copy of the statement."[61]  Carney later emailed Bickford again stating "My principals have requested you furnish us with the updated medicals including whether or not there has been any recommendation for Mr. Pellegrin to have surgery."[62]

Bonvillian Marine argues the email communications between Carney and Bickford did not constitute written notice of a claim because there is nothing in the record to support that Carney was authorized to act on behalf of Bonvillian Marine with respect to a limitation action.  At oral argument, Bonvillian Marine admitted that Carney was its agent, but argued that he was only Bonvillian Marine's agent for "claim resolution" purposes, and not for the purpose of notice of a limitation action. Bonvillian Marine further argues that the language of the statute states that an action must be brought within six months "after a claimant gives *the owner* written notice of a claim."[63]  Bonvillian Marine appeared to argue that this language means that notice can be given only to the owner directly or to a lawyer appointed by him.

The Court finds that the email between Bickford and Carney constituted notice to Bonvillian Marine.  Bonvillian Marine's argument essentially asks the Court to overlook the entire law of agency.  A notification given to an agent is effective as notice to the principal if the agent has actual or apparent authority to receive the notification.[64]  Actual authority is defined as: "For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or

---

[61] R. Doc. 14-2 at 7.
[62] *Id.* at 12.
[63] 46 U.S.C. § 30511(a) (emphasis added).
[64] Restatement (Third) of Agency § 5.02 (Am. Law Inst. 2006).

has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal."[65]  "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."[66] "A principal's manifestation to an agent often consists of an intentional act. However, a principal may also convey actual authority to an agent through unintended conduct that the agent reasonably believes to constitute an expression of the principal's intentions."[67]  Moreover, courts have found that agents may accept notice in limitation actions.  The Eleventh Circuit has stated:

> It seems reasonably clear to us—and no one here disputes—that FARA [Petitioner's insurer] was [Petitioner] Orion's agent for claims-processing purposes. FARA had at the very least apparent—and probably even actual—authority to act on Orion's behalf; indeed, it was hired specifically to assist Orion with the adjustment of claims. See Restatement (Third) of Agency §§ 3.01, 3.03 (describing actual and apparent authority).  Accordingly, any claimant who gave written notice to FARA, as Orion's agent, satisfied § 30511(a)'s writing requirement.[68]

And in *Diamond v. Butel*,[69] the Fifth Circuit stated "There is nothing . . . either in the letter of the statute or in the purpose for which it was enacted, to prevent the owner

---

[65] *Id.*, § 5.03.
[66] *Id.*, § 2.01.
[67] *Id.*
[68] *Orion*, 918 F.3d at 1333.  At oral argument, Bonvillian Marine took issue with Baywater citing *Orion* for this proposition, as Baywater argues *Orion*'s holding regarding whether the limitation statute's timeliness requirement is jurisdictional.  But although Fifth Circuit caselaw differs from *Orion*'s holding on whether the statute is jurisdictional, *Orion*'s holding on the separate issue of agency remains some persuasive authority this Court may rely upon.
[69] 247 F.2d 604 (5th Cir. 1957).

from appointing an agent to receive the notice, as he might do for the service of process."[70]

Here, Carney specifically stated "I am representing Bonvillian Marine in the captioned matter."  He in no way cabined his authority as an agent.  He also repeatedly stated that he was relaying information to "his principals," *i.e.,* Bonvillian Marine.  The Court finds that there is ample evidence to find that Carney was acting as Bonvillian Marine's agent, and that Bickford was reasonable in relying on Carney's representations that he was Bonvillian Marine's agent.  The Court further rejects Bonvillian Marine's argument that Carney was an agent for "claim resolution" purposes, but not for purposes of notice of facts giving rise to a limitation action. There is no meritorious way to distinguish between an agent who can settle a claim for a principal in the first instance and an agent that can receive notice that the claim may exceed a certain amount (here, the cost of the vessel).  Instead, this appears to be a post-hoc attempt to cabin Carney's previously granted authority that is driven by the instant litigation.  Because Carney acted as Bonvillian Marine's agent, the Court finds Bonvillian Marine had notice of the communications and documents sent by Bickford.

## C.   Value of Claim

Having determined that Carney could, and did,  receive notice for  Bonvillian Marine, the Court must determine whether the communications from Bickford to Carney put Bonvillian Marine on notice of the reasonable possibility of a claim

---

[70] *Id*. at 607.

exceeding the value of the limitation fund ($328,000.00).   On March 13, 2019, Bickford forwarded Carney the medical records of Pellegrin, which included a Progress Note from Pellegrin's February 27, 2019 visit to the orthopedic surgeon, Dr. Christopher E. Cenac.[71]  In the report, Dr. Cenac notes Pellegrin "complains of severe left leg pain, some occasional right leg pain, but mainly left. He is status post physical therapy which did not give him any relief. He remains with symptoms. We have previously discussed the possibility of injection."[72]   Dr. Cenac assessed Pellegrin as having a "L4-L5 lumbar herniated disc" and "low back with left lower extremity radiculopathy."  It continues "should he remain symptomatic [after receiving lumbar ESI], we will consider surgical intervention with left side L4-L5 microdiscectomy."[73] On March 26, 2019,  Carney contacted Bickford requesting updated medical reports and inquired whether there had been any recommendation for Pellegrin to have surgery.[74]  On August 27, 2019,  Pellegrin underwent lower back surgery (lumbar spine fusion), paid for by Baywater as part of maintenance and cure.

The question is whether or not these communications were sufficient to provide notice to Bonvillian Marine that Pellegrin's injuries may exceed the cost of the vessel. In *RLB Contracting, Inc.,*[75] the Fifth Circuit discussed the sufficiency of written notice to trigger the limitation statutes six-month deadline:

> [A] communication qualifies as "written notice" if it "reveals a 'reasonable possibility' that the claim will exceed the value of the vessel." This standard evokes two

---

[71] R. Doc. 14-2 at 9-11.
[72] *Id.* at 9.
[73] *Id.* at 11.
[74] *Id.* at 12.
[75] 773 F.3d 596 (5th Cir. 2014).

> inquiries: (1) whether the writing communicates the reasonable possibility of a claim, and (2) whether it communicates the reasonable possibility of damages in excess of the vessel's value. Answering these questions requires a "fact-intensive inquiry into the circumstances of the case."[76]

It continued: "[t]he purpose of the 'reasonable possibility' standard is to place the burden of investigating potential claims on the vessel owner." Finally, it stated: "[t]he standard is a reasonable possibility, not a reasonable probability. Although this standard 'is not toothless, it is also not particularly stringent."[77]

Because the burden is placed on the *vessel owners* to investigate, Bonvillian Marine had a responsibility to investigate and, if there was a reasonably possibility damages could exceed $328,000, it had the burden of petitioning to limit liability within the six-month time period. Bonvillian Marine stresses that surgery was only considered if Pellegrin remained symptomatic after lumbar injections. Bonvillian Marine argues that at the time, it was unknown whether the lumbar ESI would be successful or whether surgery would even be considered, and thus it does not show a reasonable possibility of a claim exceeding the Limitation Fund. However, as the Fifth Circuit has stated, all that is needed is a reasonable possibility, not probability. This argument also ignores the evidence before the Court that Mr. Carney was clearly aware of the potential need for surgery as he emailed Ms. Bickford in late March 2019 and inquired whether surgery had been recommended at that point. "If doubt exists as to the total amount of the claims or as to whether they will exceed the value of the

---

[76] *Id.* at 602 (citing *In re Eckstein*, 672 F.3d at 315).
[77] *Id.* at 602 (citing *In re Eckstein*, 672 F.3d at 317).

ship, the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."[78]  Dr. Cenac's Progress Note which discussed a future back surgery raises a reasonable possibility that the damages may exceed the value of the limitation fund, particularly when considered with additional damages, such as general damages and lost wages.  Because the doctor's note raised the reasonable possibility of the need for surgery, a claim which Bonvillian Marine would have been reasonable to believe would exceed $328,000, and was sent to Bonvillian Marine (through its agent, Carney) on March 13, 2019, Bonvillian Marine had six months—or by September 13, 2019—to institute a limitation action.  Bonvillian Marine did not institute the present limitation until December 16, 2019.[79]   Therefore, under current Fifth Circuit precedent, the Court lacks jurisdiction over this limitation action, and it must be dismissed.

---

[78] *In re Eckstein Marine Service, LLC,* 672 F.3d 310, 317-318 (5th Cir. 2012).
[79] *See* R. Doc. 1.

III.    CONCLUSION

**IT IS HEREBY ORDERED** that Baywater's Motion to Dismiss, and the Pellegrin's Motion to Dismiss, are **GRANTED**. **IT IS FURTHER ORDERED** that Bonvillian Marine's Motion for Partial Summary Judgment is **DENIED WITHOUT PREJUDICE**.

New Orleans, Louisiana, November 23, 2020.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**